# The People of the State of Illinois, ex rel. McKenzie Cleland, Plaintiff in Error, v. Albert C. Barnes, Defendant in Error.

## Gen. No. 18,585.

1. QUO WARRANTO—*what may be determined upon application for.* Upon an application for leave to file an information in *quo warranto* it is proper for the court to determine a question of law presented which is decisive of the entire controversy.

2. ELECTIONS—*when judges to be chosen not to be classified.* Where two sets of judges for the same court whose terms are to begin and end at the same time are to be elected, one set of which are to fill expiring terms of previous incumbents and the other set to assume office by reason of an act creating additional judgeships, all judges so to be chosen are to be voted for without classification and of those voted for the ones receiving the highest number of votes are to be declared elected, regardless of whether some of them were nominated at primaries held and others by conventions.

*Quo warranto.* Error to the Circuit Court of Cook county; the HON. DUANE J. CARNES, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed May 23, 1912.

JOHN E. W. WAYMAN, FRANK F. REED and CHARLES A. WILLIAMS, for plaintiffs in error.

AXEL CHYTRAUS, for defendant in error.

MR. JUSTICE BAKER delivered the opinion of the court.

This is a writ of error sued out to reverse an order of the Circuit Court denying leave to file an information in the nature of a *quo warranto* to determine the right of the respondent to the office of Judge of the Superior Court of Cook County. The facts set out in the petition, accompanying affidavits and the answer to the rule are not controverted. The case is one pre-

senting a question of law decisive in favor of the respondent if decided in his favor, and it was proper for the court to decide that question upon the application for leave to file an information.

The following is a statement of the facts sufficient for an understanding of the questions involved. Prior to June 10, 1911, there were twelve Judges of the Superior Court, the term of four of said Judges expired on the first Monday in December, 1911, and the Act of June 5, 1911, provided for the election of their successors at the November election in that year. Nominations were made by the different political parties at the April primary 1911 of four candidates for Judge of the Superior Court. The Judges whose terms expired in December were Judges Kavanagh, McSurely and Ball, republicans, and Judge Fitch, democrat. The republican nominees at the primary were Kavanagh, McSurely, Freeman and Barnes.

An Act approved June 10, 1911, increased the number of judges to eighteen and provided that the nomination for such additional offices in 1911 should be made by conventions of the precinct committeemen of the respective parties to be held September 19, 1911. At each of said conventions six candidates for Judge of the Superior Court were nominated; the relator was one of the republican nominees. The official ballots provided by the Election Commissioners in Chicago and Cicero and by the County Clerk in the rest of the County, contained under each party appellation the printed words, "For Judges of the Superior Court, 10 to be elected." Underneath these words were, at the head of the list of candidates of each party, the four candidates nominated at the primary, followed by the six candidates nominated by the conventions, with no marks or words on the printed ballots to show which of said candidates were nominated at the primary and which at the convention, or that some of said candidates were nominated to take the places of the

Judges whose terms expired in December, and others to fill the offices created by the Act of June 10, 1911. In the number of votes received the respondent was the fifth and the relator the eleventh, receiving 12,000 less votes than the respondent. The votes were canvassed on the theory that there was but one class of judges to be elected, and that the ten candidates who received the highest number of votes were elected.

All Acts relating to the Superior Court passed after June 26, 1893, and before June 10, 1911, provided that the Judges of said court should enter upon the office on the first Monday of December after their election. Act of March 31, 1907, Laws of 1897, 216; Act of February 16, 1907, Laws of 1907, 262; Act of June 5, 1911, Laws of 1911, 284.

Section 1 of the Act of June 10, 1911, (Hurd's Stat. 680) provides that "the number of judges of the Superior Court of Cook County be and the same is hereby increased from twelve, its present number, to eighteen." Section 2 provides for the election of said six judges in November, 1911, and every six years thereafter, "to hold their offices for a term of six years and until their successors shall be elected and qualified." Section 3 provides that the nominations "for said additional offices," shall be made under the primary law, excepting that in 1911 they shall be made by conventions and that the nominations so made, "shall be placed on the official ballot to be voted for at said election in the same manner as if said nominations had been made at a primary election." The County Clerk gave notice that on November 7, 1911, an election would be held for four judges of the Superior Court, in compliance with the Act of June 5, 1911, and also for six judges of said court, in compliance with the Act of June 10, 1911.

The basis of the petition was that there were two classes of judges elected, one class to fill the vacancies caused by the expiration of the terms of four of the

sitting Judges, the other to fill the six additional offices created by the Act of June 10, 1911; that the nominations at the April primary were and could be only for the offices existing at that time; that the nominations made by the conventions in September, pursuant to the Act of June 10th, were and could be only for the additional offices created by that Act, and that as respondent was the fifth in the number of votes given to primary nominees and the relator sixth in the number of votes given to convention nominees, the relator was elected and the respondent was a usurper. The contention of the respondent is that there were not two classes of judges, but ten places of one class to be filled, and that he, being one of the ten candidates receiving the highest number of votes, was elected.

The acts of June 5 and June 10, 1911, relate to the same subject and should be read together and in connection with all other acts relating to the same subject.

We do not think that it was the intention of the Legislature to create two classes of judges to be elected at the same time, each for a full term of six years, but that the intention of the Legislature was to increase the number of judges from twelve to eighteen and provide for the nomination and election of six additional judges both in 1911 and at the expiration of the terms of the judges then elected. It provided that the nominations in 1911 should be made by conventions and that the nominations so made should be placed on the official ballot in the "same manner as if the nominations had been made at a primary election." This we think means that the convention nominations were to be placed on the ballot in one group with the primary nominations, and gave to the officers charged with the duty of preparing the official ballot no authority to divide the nominees for Judges of the Superior Court into two classes. The ballots were prepared on the theory that ten judges were to be voted for indiscrim-

inately for full terms, and we think were properly so prepared and that the ten candidates receiving the highest number of votes were elected. This conclusion renders it unnecessary to consider the other questions argued by counsel.

Leave to file the information was properly refused, and the order denying such leave and dismissing the petition is affirmed.

*Affirmed.*